# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Kristi Kay Jacobsen, Trustee for the Next
of Kin of Ada Marie Yakal, Deceased,

    Plaintiff,

vs.

Sunrise Senior Living Management, Inc.;
Gentiva Certified HealthCare Corp, d/b/a
Kindred at Home; and Amy Andersen

    Defendants.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, for her Complaint against Defendants above-named, states and alleges as follows:

## I.   JURISDICTION AND VENUE

1. Federal jurisdiction exists, pursuant to 28 U.S.C. § 1332 due to complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

2. Venue is proper in the United States District Court District of Minnesota, pursuant to 28 U.S.C. § 1391(b)(2), as the claims arose in this district.

## II.   THE PARTIES

3. **ADA YAKAL** was a resident of Roseville, Minnesota (Ramsey County) at all relevant times, including at the time of her death on or about December 28, 2016.

4. Ada Yakal was a resident of a housing with services in Roseville, Minnesota, known as "Sunrise Assisted Living of Roseville," at all relevant times, including December 27 and 28, 2016.

5.   Kristi Kay Jacobsen, a resident of Cape Coral, Florida, has been duly appointed as trustee for the next-of-kin of her mother, Ada Yakal.

6.   Kristi Kay Jacobsen brings this action on behalf of the next-of-kin of Ada Yakal, pursuant to Minn. Stat. § 573.02.

7.   **SUNRISE SENIOR LIVING MANAGEMENT, INC.,** obtained a license from the Minnesota Department of Health, which allowed Sunrise Senior Living Management, Inc. to provide comprehensive home care services at a care facility located at 2555 Snelling Avenue North in Roseville, Minnesota, known as and referred to herein as "Sunrise Assisted Living of Roseville." The comprehensive home care license issued to Sunrise Senior Living Management, Inc. was in effect at all relevant times.

8.   Sunrise Senior Living Management, Inc. is a foreign business corporation, organized under the laws of Virginia. Sunrise Senior Living Management, Inc.'s office address registered with the Minnesota Secretary of State is 1010 Dale Street North in St. Paul, Minnesota (Ramsey County).

9.   Sunrise Senior Living Management, Inc. is legally responsible for the comprehensive home care services owed to Ada Yakal during her residency at Sunrise Assisted Living of Roseville.

10.  **GENTIVA CERTIFIED HEALTHCARE CORP** obtained a license from the Minnesota Department of Health, which allowed Gentiva Certified HealthCare Corp to provide comprehensive home care services, including physical therapy. The comprehensive home care license issued to Gentiva Certified HealthCare Corp was in effect at all relevant times.

11.  Gentiva Certified HealthCare Corp is a foreign business corporation organized under the laws of Delaware. Gentiva Certified HealthCare Corp's office address registered with

the Minnesota Secretary of State is 1010 Dale Street North in St. Paul, Minnesota (Ramsey County).

12. Gentiva Certified HealthCare Corp is the registered name holder for "Kindred at Home", which is an assumed name.

13. Gentiva Certified HealthCare Corp d/b/a Kindred at Home provided home care services, including physical therapy to Ada Yakal, including in December of 2016.

14. Gentiva Certified HealthCare Corp entered into a contract with Sunrise Senior Living Management, Inc., to provide home care services to residents that lived at Sunrise Assisted Living of Roseville.

15. **AMY ANDERSEN** is a licensed physical therapist who resides in Blaine, Minnesota (Anoka County).

16. Amy Andersen was an employee and/or agent of Gentiva Certified HealthCare Corp at all relevant times, including December of 2016.

17. Amy Andersen's physical therapy license number, granted by the State of Minnesota, is 6280.

### DEFENDANTS' PRINCIPAL-AGENT RELATIONSHIP
(Gentiva Certified HealthCare Corp, and Amy Andersen)

18. Gentiva Certified HealthCare Corp established a Principal-Agent relationship with Amy Andersen, in that: a) Gentiva Certified HealthCare Corp (as the principal) manifested that Amy Andersen would act as Gentiva Certified HealthCare Corp's agent; b) Amy Andersen accepted this undertaking; and c) there was an understanding by the parties that Gentiva Certified HealthCare Corp was to be in control of the undertaking.

19. As a consequence of the principal-agent relationship between these Defendants, Gentiva Certified HealthCare Corp is liable for wrongful acts of its agent, Amy Andersen, resulting in the harm to Ada Yakal.

### DEFENDANTS' JOINT ENTERPRISE
(Sunrise Senior Living Management, Inc., and Gentiva Certified HealthCare Corp)

20. Sunrise Senior Living Management, Inc. and Gentiva Certified HealthCare Corp have established a joint enterprise in that: a) Sunrise Senior Living Management, Inc. and Gentiva Certified HealthCare Corp had a mutual understanding for the common purpose of operating Sunrise Assisted Living of Roseville; b) Sunrise Senior Living Management, Inc. and Gentiva Certified HealthCare Corp each had a right to a voice in the direction and control of means used to carry out their common purpose; and c) Sunrise Senior Living Management, Inc. and Gentiva Certified HealthCare Corp each acted as an agent of the other for the purpose of operating Sunrise Assisted Living of Roseville.

21. As a consequence of their joint enterprise, Sunrise Senior Living Management, Inc., and Gentiva Certified HealthCare Corp owed a joint duty to Ada Yakal to exercise reasonable care for her safety while upon their premises and under their care and supervision at Sunrise Assisted Living of Roseville.

22. As a consequence of their joint enterprise, each Defendants wrongful acts and omissions constitute the acts and omissions of the other Defendant and the fault of Sunrise Senior Living Management, Inc. and Gentiva Certified HealthCare Corp shall be aggregated.

### III.  STATEMENT OF FACTS

23. Sunrise Senior Living Management, Inc., accepted Ada Yakal as a client November 16, 2016.

24. Sunrise Senior Living Management, Inc., contracted with Gentiva Certified HealthCare Corp to provided services to Ada Yakal, including physical therapy.

25. Gentiva Certified HealthCare Corp employed physical therapists, including Amy Andersen, to provide physical therapy and physical therapy assessments to Ada Yakal.

26. Ada Yakal required comprehensive home care services because she was no longer able to walk or care for herself at home and she had some dementia which caused her to become confused at times.

27. At Sunrise Assisted Living of Roseville, Ada Yakal was deprived of normal opportunities of self-protection because she was a vulnerable adult with physical and cognitive limitations.

28. Ada Yakal's safety was entrusted to the Defendants, who accepted that entrustment.

29. Ada Yakal was dependent on Defendants to provide for her safety at the time she was injured in December of 2016.

30. Defendants held considerable power over Ada Yakal's welfare at the time she was injured December of 2016.

31. At Sunrise Assisted Living of Roseville, employees of Sunrise Senior Living Management, Inc., documented that Ada Yakal had a history of falling out of bed.

32. Similarly, employees of Sunrise Senior Living Management, Inc., documented Ms. Yakal would reach for things on her nightstand while in bed.

33. In fact, employees documented that they found Ms. Yakal with her legs out of the bed and her head still on the bed.

34. As a result, Sunrise Senior Living Management, Inc., concluded that Ada Yakal should be placed in the middle of the bed at night for her comfort and safety.

35. At Sunrise Assisted Living of Roseville, Ms. Yakal needed assistance of two people and a device to transfer between surfaces.

36. Employees of Sunrise Senior Living Management, Inc., documented that at minimum, Ms. Yakal needed a grab bar, a gait belt, and two staff to transfer but if she was confused she needed an easy stand lift and two staff.

37. Amy Andersen, on behalf of Gentiva Certified HealthCare Corp, assessed Ms. Yakal as appropriate to use a transfer pole to assist in transferring from her bed to her wheelchair.

38. Upon the assessment of Amy Andersen, Sunrise Senior Living Management, Inc. installed a transfer pole next to Ada Yakal's bed.

39. The Sunrise Senior Living Management, Inc. employee that installed the transfer pole did not consult the manufacturer's instructions for installing a transfer pole.

40. Had that employee consulted the manufacturer's instructions for installing a transfer pole, the employee would have learned that the transfer pole should not be placed "closer than the users ability to safely walk around the pole" because "there may be a possibility of becoming entrapped between the pole and the side of any object adjacent to the pole."

41. Sunrise Senior Living Management, Inc., did not have any policies or procedures on the placement of the transfer pole.

42. Gentiva Certified HealthCare Corp did not have policies or procedures for the recommending how far to place the transfer pole from the bed.

43. However, Gentiva Certified HealthCare Corp's employee Amy Andersen stated that her common practice was to place the transfer pole approximately a fist width from the bed.

44. On December 27, 2016, Sunrise Senior Living Management, Inc., employees put Ms. Yakal into bed at approximately 9:00 p.m.

45. At approximately, 12:30 a.m. the following day, Sunrise Senior Living Management, Inc., employees found Ms. Yakal trapped in between her bed and the transfer pole.

46. According to one of the employees, Ms. Yakal's lips were blue when they first encountered her. The employee stated that Ms. Yakal's head was trapped in the pole and her body was hanging down on the floor.

47. Ada Yakal died due to asphyxiation caused by compression between the bed and the transfer pole.

48. The Minnesota Department of Health investigated Ada Yakal's death and determined that Sunrise Senior Living Management, Inc., neglected Ada Yakal. The Department of Health report is attached to and incorporated in this Complaint as Exhibit 1.

49. Ada Yakal's injury and death on or about December 28, 2016, would not ordinarily occur in the absence of negligence.

50. The cause of Ada Yakal's injury and death on or about December 28, 2016, was in the exclusive control of Defendant.

51. Ada Yakal's injury and death on or about December 28, 2016, was not due to conduct for which Ada Yakal was responsible.

### IV. LEGAL THEORIES

COUNT ONE
PROFESSIONAL NEGLIGENCE
(Against Sunrise Senior Living Management, Inc.;
Gentiva Certified HealthCare Corp, d/b/a Kindred at Home; and Amy Andersen)

52. Plaintiff incorporates all consistent paragraphs of this Complaint as if fully set forth under this count and further alleges the following:

53. Defendants and/or their employees and/or agents owed legal duties to Ada Yakal that included, but were not limited to, the following:

54. a duty to comply with applicable federal regulations, state statutes and rules, and professional standards of care;

55. a duty to provide Ada Yakal with the necessary care and services to attain or maintain her highest practicable physical, mental, and psychological well-being;

56. a duty to accurately and completely assess Ada Yakal's needs and status; and

57. a duty to provide appropriate treatment and services to maintain or improve Ada Yakal's abilities in activities of daily living.

58. Defendants and/or its employees and/or agents were negligent in the care and treatment of Ada Yakal, violating applicable standards of care that included, but were not limited to, the following:

59. failing to comply with applicable federal regulations, state statutes and rules, and professional standards of care;

60. failing to provide Ada Yakal with the necessary care and services to attain or maintain her highest practicable physical, mental, and psychological well-being;

61. failing to accurately and completely assess Ada Yakal's needs and status; and

62. failing to provide appropriate treatment and services to maintain or improve Ada Yakal's abilities in activities of daily living.

63. Ada Yakal suffered serious injury and death on or about December 28, 2016, at Sunrise Assisted Living of Roseville as a direct and proximate result of the professional negligence of Defendants and/or their employees and/or agents.

## COUNT TWO
### DIRECT LIABILITY FOR NEGLIGENT SUPERVISION AND MANAGEMENT
(Against Sunrise Senior Living Management, Inc.; and
Gentiva Certified HealthCare Corp)

64. Plaintiff incorporates all consistent paragraphs of this Complaint as if fully set forth under this count and further alleges the following:

65. A special relationship existed between Defendants Sunrise Senior Living Management, Inc. and Gentiva Certified HealthCare Corp, and Ada Yakal at the time she was injured on or about December 28, 2016.

66. Defendants Sunrise Senior Living Management, Inc. and Gentiva Certified HealthCare Corp owed Ada Yakal a duty to use reasonable care to protect her from reasonably foreseeable harm and to avoid exposing her to unreasonable risks of harm.

67. Injury to Ada Yakal was reasonably foreseeable if Defendants Sunrise Senior Living Management, Inc. and Gentiva Certified HealthCare Corp had entrusted her care and well-being to staff who lacked the training, experience, competence, and supervision required to meet her needs at Sunrise Assisted Living of Roseville.

68. Defendants Sunrise Senior Living Management, Inc. and Gentiva Certified HealthCare Corp breached legal duties it owed to Ada Yakal to exercise reasonable care in the management and supervision of the care delivered to residents of Sunrise Assisted Living of Roseville, including *but not limited to* properly assigning responsibilities to competent staff and supervising the nursing staff and provision of care.

69. Defendants Sunrise Senior Living Management, Inc. and Gentiva Certified HealthCare Corp owed these duties of care directly to Ada Yakal, separate from those of Defendant's individual employees and/or agents. A finding of vicarious liability by virtue of the relationship between Sunrise Senior Living Management, Inc. and its employees and/or agents,

for example, the causes of action alleged in Counts 1, above, do not preclude a finding of direct liability against Defendants Sunrise Senior Living Management, Inc. and Gentiva Certified HealthCare Corp in this Count because an employer who is found vicariously liable for the acts of its employee may also be found directly liable for harm caused by the employer's own negligence.

## V.   DAMAGES

70.   Plaintiff incorporates all consistent paragraphs of this Complaint as if fully set forth under this count and further alleges the following:

71.   As a direct and proximate result of Defendants' negligence, the next-of-kin of Ada Yakal have incurred expenses for the last illness and funeral expenses, and they have sustained pecuniary and non-pecuniary losses within the meaning of Minn. Stat. § 573.02 and were otherwise damaged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants—individually, jointly, concurrently, vicariously, and/or severally—for a reasonable sum in excess of seventy-five thousand dollars ($75,000.00), together with interest, costs and disbursements herein, and granting such other equitable relief as the Court deems just and equitable.

**KOSIERADZKI SMITH LAW FIRM, LLC**

Dated: April 4, 2018

s/ Andrew D. Gross
Mark R. Kosieradzki (ID # 57745)
Andrew D. Gross (ID #0395389)
3675 Plymouth Boulevard, Suite 105
Plymouth, MN 55446
Phone: (763) 746-7800
Email: mark@koslawfirm.com
andrew@koslawfirm.com
*Attorneys for Plaintiff*

# EXHIBIT 1



# Minnesota Department of Health

## Office of Health Facility Complaints Investigative Report
### PUBLIC

| Facility Name: | Report Number: | Date of Visit: |
|---|---|---|
| Sunrise Assisted Living of Roseville | HL22361005 | January 4, 2017 |

| Facility Address: | Time of Visit: | Date Concluded: |
|---|---|---|
| 2555 Snelling Avenue North | 8:15 a.m. - 3:00 p.m. | March 30, 2017 |

| Facility City: | | | Investigator's Name and Title: |
|---|---|---|---|
| Roseville | | | Deborah Neuberger, RN, Special Investigator |

| State: | ZIP: | County: | Date Revised: |
|---|---|---|---|
| Minnesota | 55113 | Ramsey | October 2, 2017 |

☒ Home Care Provider/Assisted Living

Revised by:
Kris Lohrke, RN, Director

### Allegation(s):
It is alleged the resident was neglected when staff found the resident entrapped between the bed and the transfer device. The resident was deceased.

☒ State Statutes for Home Care Providers (MN Statutes, section 144A.43 - 144A.483)
☒ State Statutes for Vulnerable Adults Act (MN Statutes, section 626.557)
☒ State Statutes Chapters 144 and 144A

### Conclusion:
Based on a preponderance of evidence, neglect is ~~not~~ substantiated. ~~Although staff found t~~The client became entrapped between the bed and the transfer pole and was found dead. Staff needed to move the bed to release the client's body. ~~, staff had assessed the client for safety while using the pole and the client could safely use the device.~~ During an administrative reconsideration, additional information became available which impacted the investigation result.

The client received home care services including assistance with toileting and two-three safety checks per night. The client's care plan reflected that s/he rolled out of bed at a previous facility. The client received physical therapy to assess for safety and provide education related to the use of a transfer pole (a stationary vertical pole, connected to the floor at the bottom and the ceiling at the top, near a bed or chair, used to increase an individual's independence when rising out of a bed or chair). Physical therapy recommended the transfer pole and the facility staff installed the pole. The client had physical therapy (PT) assessments on four occasions during the month preceding the incident, and PT staff assessed the client as safe to use the pole.

The evening of the incident, staff saw the client at about 9:00 p.m., safe and in bed. At about 12:30 a.m., staff members found the client with his/her neck entrapped between the bed and the transfer pole. The client was not breathing. Staff called 911, moved the bed to free the client from the entrapment, and initiated CPR on the client until emergency medical services (EMS) took over.

The EMS care report states that the client was wedged and pinned with her/his neck pushed up against the transfer pole. The report also reflects that the client had ecchymosis (blood under the skin) on her/his face

EXHIBIT 1

Facility Name: Sunrise Assisted Living of Roseville

Report Number: HL22361005

and bleeding from the mouth.

During an interview, the facility administrator stated that the facility did not have a policy specific to the use of transfer poles or the safe distance for a transfer pole from a bed.

PT staff stated they assessed the client for safety with the use of a transfer pole. The assessment included the client's ability to complete the transfer, the type of assist required, efficiency and safety of the device, the strength of the client, the client's ability to follow direction, the client's ability to plan movement, coordinate movement and control movement. PT staff last assessed the client for safety of his/her use of the device on the day before the incident, and the client safely used the device to move him/herself. PT reported that there was no distance standard for safe placement of transfer poles, but they suggested a fist width distance.

Under a warnings heading, the manufacturer's instructions for the transfer pole state the pole should not be "closer than the users ability to safely walk around the pole or there may be a possibility of becoming entrapped between the pole and the side of any object adjacent to the pole."

During interviews, the client's family stated agency staff recommended the use of the transfer pole because the client did not like using a mechanical transfer device.

During an interview, the client's physician stated that transfer poles are an appropriate transfer device for clients when they are assessed for safety by PT, which had occurred for this client.

The death certificate indicated the client's cause of death was Alzheimer's Dementia.

Minnesota Vulnerable Adults Act (Minnesota Statutes, section 626.557)

Under the Minnesota Vulnerable Adults Act (Minnesota Statutes, section 626.557):

☐ Abuse          ☒ Neglect           ☐ Financial Exploitation
☒ Substantiated  ☒ ~~Not Substantiated~~   ☐ Inconclusive based on the following information:

**Mitigating Factors:**
The "mitigating factors" in Minnesota Statutes, section 626.557, subdivision 9c (c) were considered and it was determined that the ☐ Individual(s) and/or ☒ Facility is responsible for the
☐ Abuse       ☒ Neglect   ☐ Financial Exploitation. This determination was based on the following:
The facility failed to ensure that staff followed the manufacturer's instructions for the installation of the transfer pole and did not have adequate policy or procedure in place to ensure safe placement of the pole.
The responsible party will be notified of their right to appeal the maltreatment finding. If the maltreatment is substantiated against an identified employee, this report will be submitted to the nurse aide registry for possible inclusion of the finding on the abuse registry and/or to the Minnesota Department of Human Services for possible disqualification in accordance with the provisions of the background study requirements under Minnesota 245C.

EXHIBIT 1

Facility Name: Sunrise Assisted Living of Roseville

Report Number: HL22361005

## Compliance:

State Statutes for Home Care Providers (MN Statutes section 144A.43 - 144A.483) – Compliance Met
The facility was found to be in compliance with State Statutes for Home Care Providers (MN Statutes section 144A.43 - 144A.483). No state licensing orders were issued.

State Statutes for Vulnerable Adults Act (MN Statutes, section 626.557) – Compliance Met
The facility was found to be in compliance with State Statutes for Vulnerable Adults Act (MN Statutes, section 626.557. No state licensing orders were issued.

State Statutes Chapters 144 & 144A – Compliance Met
The facility was found to be in compliance with State Statutes for Chapters 144 & 144A. No state licensing orders were issued.

**Compliance Notes:**

## Facility Corrective Action:
The facility took the following corrective action(s):

## Definitions:

**Minnesota Statutes, section 626.5572, subdivision 17 - Neglect**
"Neglect" means:

(a) The failure or omission by a caregiver to supply a vulnerable adult with care or services, including but not limited to, food, clothing, shelter, health care, or supervision which is:

(1) reasonable and necessary to obtain or maintain the vulnerable adult's physical or mental health or safety, considering the physical and mental capacity or dysfunction of the vulnerable adult; and

(2) which is not the result of an accident or therapeutic conduct.

(b) The absence or likelihood of absence of care or services, including but not limited to, food, clothing, shelter, health care, or supervision necessary to maintain the physical and mental health of the vulnerable adult which a reasonable person would deem essential to obtain or maintain the vulnerable adult's health, safety, or comfort considering the physical or mental capacity or dysfunction of the vulnerable adult.

(c) For purposes of this section, a vulnerable adult is not neglected for the sole reason that:

EXHIBIT 1

Facility Name: Sunrise Assisted Living of Roseville                                      Report Number: HL22361005

(1) the vulnerable adult or a person with authority to make health care decisions for the vulnerable adult under sections 144.651, 144A.44, chapter 145B, 145C, or 252A, or sections 253B.03 or 524.5-101 to 524.5-502, refuses consent or withdraws consent, consistent with that authority and within the boundary of reasonable medical practice, to any therapeutic conduct, including any care, service, or procedure to diagnose, maintain, or treat the physical or mental condition of the vulnerable adult, or, where permitted under law, to provide nutrition and hydration parenterally or through intubation; this paragraph does not enlarge or diminish rights otherwise held under law by:

(i) a vulnerable adult or a person acting on behalf of a vulnerable adult, including an involved family member, to consent to or refuse consent for therapeutic conduct; or

(ii) a caregiver to offer or provide or refuse to offer or provide therapeutic conduct; or

(2) the vulnerable adult, a person with authority to make health care decisions for the vulnerable adult, or a caregiver in good faith selects and depends upon spiritual means or prayer for treatment or care of disease or remedial care of the vulnerable adult in lieu of medical care, provided that this is consistent with the prior practice or belief of the vulnerable adult or with the expressed intentions of the vulnerable adult;

(3) the vulnerable adult, who is not impaired in judgment or capacity by mental or emotional dysfunction or undue influence, engages in consensual sexual contact with:

(i) a person including a facility staff person when a consensual sexual personal relationship existed prior to the caregiving relationship; or

(ii) a personal care attendant, regardless of whether the consensual sexual personal relationship existed prior to the caregiving relationship; or

(4) an individual makes an error in the provision of therapeutic conduct to a vulnerable adult which does not result in injury or harm which reasonably requires medical or mental health care; or

(5) an individual makes an error in the provision of therapeutic conduct to a vulnerable adult that results in injury or harm, which reasonably requires the care of a physician, and:

(i) the necessary care is provided in a timely fashion as dictated by the condition of the vulnerable adult;

(ii) if after receiving care, the health status of the vulnerable adult can be reasonably expected, as determined by the attending physician, to be restored to the vulnerable adult's preexisting condition;

(iii) the error is not part of a pattern of errors by the individual;

EXHIBIT 1

Facility Name: Sunrise Assisted Living of Roseville

Report Number: HL22361005

     (iv) if in a facility, the error is immediately reported as required under section 626.557, and recorded internally in the facility;

     (v) if in a facility, the facility identifies and takes corrective action and implements measures designed to reduce the risk of further occurrence of this error and similar errors; and

     (vi) if in a facility, the actions required under items (iv) and (v) are sufficiently documented for review and evaluation by the facility and any applicable licensing, certification, and ombudsman agency.

     (d) Nothing in this definition requires a caregiver, if regulated, to provide services in excess of those required by the caregiver's license, certification, registration, or other regulation.

     (e) If the findings of an investigation by a lead agency result in a determination of substantiated maltreatment for the sole reason that the actions required of a facility under paragraph (c), clause (5), item (iv), (v), or (vi), were not taken, then the facility is subject to a correction order. An individual will not be found to have neglected or maltreated the vulnerable adult based solely on the facility's not having taken the actions required under paragraph (c), clause (5), item (iv), (v), or (vi). This must not alter the lead agency's determination of mitigating factors under section 626.557, subdivision 9c, paragraph (c).

**Minnesota Statutes, section 626.5572, subdivision 19 - Substantiated**
"Substantiated" means a preponderance of the evidence shows that an act that meets the definition of maltreatment occurred.

~~**Minnesota Statutes, section 626.5572, subdivision 7 - Not Substantiated**~~
~~"Not Substantiated" means a preponderance of the evidence shows that an act that meets the definition of maltreatment did not occur.~~

**The Investigation included the following:**
**Document Review:** The following records were reviewed during the investigation:
- ☒ Medical Records
- ☒ Care Guide
- ☒ Medication Administration Records
- ☒ Nurses Notes
- ☒ Assessments
- ☒ Physician Orders
- ☒ Care Plan Records

EXHIBIT 1

Facility Name: Sunrise Assisted Living of Roseville  
Report Number: HL22361005

- [x] Facility Incident Reports
- [x] Therapy and/or Ancillary Services Records
- [x] ADL (Activities of Daily Living) Flow Sheets
- [x] Service Plan

**Other pertinent medical records:**
- [x] Death Certificate    [x] Police Report

**Additional facility records:**
- [x] Staff Time Sheets, Schedules, etc.
- [x] Facility Internal Investigation Reports
- [x] Facility Policies and Procedures

Number of additional resident(s) reviewed: Three

Were residents selected based on the allegation(s)?   ● Yes   ○ No   ○ N/A  
Specify: _____

Were resident(s) identified in the allegation(s) present in the facility at the time of the investigation?  
○ Yes   ● No   ○ N/A  
Specify: The resident was deceased.

**Interviews: The following interviews were conducted during the investigation:**

Interview with complainant(s)   ○ Yes   ○ No   ● N/A  
Specify: _____  
If unable to contact complainant, attempts were made on:  
Date:         Time:         Date:         Time:         Date:         Time:

Interview with family:  ● Yes   ○ No   ○ N/A   Specify: _____  
Did you interview the resident(s) identified in allegation:  
○ Yes   ○ No   ● N/A   Specify: Deceased  
Did you interview additional residents?   ● Yes   ○ No  
Total number of resident interviews: Five  
Interview with staff:  ● Yes   ○ No   ○ N/A   Specify: _____

**Tennessen Warnings**  
Tennessen Warning given as required:  ● Yes   ○ No

EXHIBIT 1

Facility Name: Sunrise Assisted Living of Roseville

Report Number: HL22361005

Total number of staff interviews: Nine
Physician Interviewed: ◉ Yes  ○ No
Nurse Practitioner Interviewed: ○ Yes  ◉ No
Physician Assistant Interviewed: ○ Yes  ◉ No
Interview with Alleged Perpetrator(s): ○ Yes  ○ No  ◉ N/A  Specify: None identified
Attempts to contact:
Date:        Time:        Date:        Time:        Date:        Time:

If unable to contact was subpoena issued: ○ Yes, date subpoena was issued _____  ○ No
Were contacts made with any of the following:
☐ Emergency Personnel  ☒ Police Officers  ☐ Medical Examiner  ☐ Other: Specify _____

**Observations were conducted related to:**
☒ Personal Care
☒ Nursing Services
☒ Use of Equipment
☒ Cleanliness
☒ Dignity/Privacy Issues
☒ Safety Issues
☒ Facility Tour

Was any involved equipment inspected: ◉ Yes  ○ No  ○ N/A
Was equipment being operated in safe manner: ◉ Yes  ○ No  ○ N/A
Were photographs taken: ○ Yes  ◉ No  Specify: _____

cc:
**Health Regulation Division - Home Care & Assisted Living Program**
**The Office of Ombudsman for Long-Term Care**
**Roseville Police**
**Roseville City Attorney**
**Ramsey County Attorney**
**Ramsey County Medical Examiner**

EXHIBIT 1

PRINTED: 01/27/2017
FORM APPROVED

Minnesota Department of Health

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: H22361 | (X2) MULTIPLE CONSTRUCTION A. BUILDING: _____ B. WING _____ | (X3) DATE SURVEY COMPLETED C 01/23/2017 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| SUNRISE ASSTD LIV OF ROSEVILLE | 2555 SNELLING AVENUE NORTH ROSEVILLE, MN 55113 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| 0 000 | Initial Comments<br><br>A complaint investigation was conducted to investigate complaint #HL22361005. No correction orders are issued. | 0 000 | | |

Minnesota Department of Health
LABORATORY DIRECTOR'S OR PROVIDER/SUPPLIER REPRESENTATIVE'S SIGNATURE          TITLE          (X6) DATE

STATE FORM          6899          V31H11          If continuation sheet 1 of 1

EXHIBIT 1